IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY BLACKLEDGE and RICK EDDELMAN, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Case No.: 22-cv-01947-SEB-MG ) ) |
| UNITED PARCEL SERVICE, INC., UPS PENSION PLAN, UPS PARCEL, UPS FREIGHT, and TEAMSTERS UNION LOCAL # 135, TRUSTEES OF THE UPS PENSION PLAN, PLAN ADMINISTRATOR OF THE UPS PENSION PLAN | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

Plaintiffs Gary Blackledge and Rick Eddelman, by counsel and for their Second Amended Complaint against Defendants, allege the following based upon their information and belief:

## PARTIES

1. Plaintiff Gary Blackledge is an adult male who resides in Putnam County, Indiana.

2. Plaintiff Rick Eddelman is an adult male who resides in Johnson County, Indiana

3. Defendant United Parcel Service, Inc. ("UPS"), is a Delaware corporation with its principal place of business in Atlanta, Georgia. UPS has facilities throughout the United States, including in Indianapolis, Indiana.

4. Defendant UPS Parcel is a Delaware corporation with its principal place of business in Atlanta, Georgia. UPS Parcel has facilities throughout the United States, including in Indianapolis, Indiana.

1

5. UPS Parcel is a subsidiary corporation of UPS.

6. Defendant UPS Freight (n/d/b/a TFI International) is a Delaware corporation with its principal place of business in Richmond, Virginia. UPS Freight has facilities throughout the United States, including in Indianapolis, Indiana.

7. Defendant UPS Freight is a subsidiary corporation of UPS.

8. Defendant UPS Pension Plan (a/k/a UPS Group Trust) is a corporate pension plan located in Atlanta, Georgia. Defendant Trustees of the UPS Pension Plan and Plan Administrator of the UPS Pension Plan are the individuals who run the UPS Pension Plan,

9. Defendant Teamsters Union Local 135 ("the Union") is a labor organization representing employees in an industry affecting commerce within the meaning of Section 301 of the Labor Management Relations Act (29 U.S.C. § 185) and is located in Indianapolis, Indiana. .

## JURISDICTION AND VENUES

10. This is a suit for monetary damages relating to Plaintiffs' allegations that Defendants United Parcel Service, Inc., UPS Pension Plan, UPS Parcel, and UPS Freight's (collectively, "the UPS Defendants") violated Plaintiffs' rights under the UPS Pension Plan that are protected by the Employment Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*.

11. This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States and because Plaintiffs seek to enforce their rights under the federal law known as ERISA. 29 U.S.C.§ 1132(e)(2).

12. This Court possesses personal jurisdiction over the UPS Defendants because each of the UPS Defendants conduct business in Indianapolis, Indiana, as well as other places within the jurisdictional territory of the United States District Court for the Southern District of Indiana.

13. Venue is proper in this District under 29 U.S.C. 29 U.S.C.§ 1132(e)(2) because some of the conduct and/or omissions for which relief is sought by Plaintiffs against the UPS Defendants occurred within this District.

14. This Court possesses supplemental jurisdiction over Plaintiffs' state law claim against the Union pursuant to 28 U.S.C. § 1367(c).

## FACTUAL ALLEGATIONS

15. Blackledge worked for UPS Freight as a truck driver from August 16, 2010, until September 30, 2017.

16. In March 2017, representatives from the Union asked Blackledge if he wanted to go to UPS Parcel.

17. Representatives from the Union advised Blackledge that, in order to process the transfer from UPS Freight to UPS Parcel, he would need to sign a resignation letter with UPS Freight.

18. Blackledge acquiesced, in reliance on the Union's representation, and signed a resignation letter effective September 30, 2017.

19. On October 9, 2017, Blackledge began working as a seasonal truck driver for UPS Parcel.

20. Blackledge continues to work for UPS Parcel today.

21. After Blackledge made the transfer from UPS Freight to UPS Parcel, many of his employment indicators remained the same.

22. Blackledge's employee badge at UPS Parcel did not say "seasonal driver" as many of the other new driver's employee badges indicated.

23. Blackledge's employee badge number remained the same number with UPS Parcel

3

as it had been with UPS Freight.

24. Blackledge was still able to access the UPSERS employee portal, using the same credentials.

25. Blackledge's employer subsidized health insurance remained the same except for a two-week gap in coverage.

26. Blackledge's insurance numbers remained the same with UPS Parcel as the numbers had been with UPS Freight.

27. Prior to working for UPS Freight, Blackledge worked for Overnight Transportation.

28. Blackledge began working for Overnight Transportation in April 1994.

29. After UPS Freight purchased or assumed ownership of Overnight Transportation, Blackledge maintained his seniority rights with UPS Freight, with a seniority date of April 1994.

30. Blackledge's facial hair variance transferred with him from UPS Freight to UPS Parcel.

31. Blackledge's rights under the Family and Medical Leave Act (29 U.S.C. § 2601 *et seq*.) transferred with him from UPS Freight to UPS Parcel.

32. In sum, all employment indications and representations presented to Blackledge indicated that he was a fulltime employee, not a seasonal driver, with UPS Parel based upon his transfer from UPS Freight.

33. UPS Freight makes retirement buyouts to its former employees after an employee has left UPS Freight's employment for one year.

34. Because he was induced by the Union and others to sign a resignation letter resigning his position with UPS Freight, Blackledge requested a retirement buyout from UPS Freight.

4

35.	However, UPS Freight informed Blackledge that he was not eligible for a retirement buyout because he had never left UPS's employment and, therefore, did not qualify for a buyout.

36.	 Thereafter, Blackledge contacted the Union for assistance with his retirement buyout.

37.	However, the Union informed Blackledge that he was not vested in the UPS Pension Plan or the IBT Local 710 Pension Plan because he had only 1.5 credits towards his retirement.

38.	Eddelman was hired by UPS Freight as a semi driver July 2008.

39.	On July 3, 2019 Eddelman was transferred to UPS Feeders, also as a semi driver.

40.	Several aspects of Eddelman's employment remained the same. For example, Eddelman had the same employee identification number, the same health insurance, and his UPSER account is still active and available.

41.	However, according the UPS Pension, Eddelman has lost 11 years towards pension, which has cost him hundreds of thousands of dollars.

42.	Eddelman is paid a lower hourly rate than he is entitled to receive.

43.	Eddelman does not receive the proper amount of vacation, according to his seniority.

44.	Plaintiffs have fulfilled all conditions precedent and exhausted all administrative remedies necessary to file this suit.

45.	On February 24, 2021, Plaintiff Gary Blackledge sent a demand (Exhibit A) upon Defendants UPS Pension Plan, the Trustees of the UPS Pension Plan and the Plan Administrator, complaining of illegal discrimination in violation of ERISA by these Defendants, who never

responded to Plaintiff's correspondence.

46. On March 11, 2021, Plaintiff Gary Blackledge filed a grievance (Exhibit B) alleging violations of the Collective Bargaining Agreement and law on behalf of himself and all other similarly situated, seeking all wages, fringe benefits, pension credits and other damages.

47. On August 25, 2021, a hearing was held on Mr. Blackledge's grievance. No decision was ever made regarding Mr. Blackledge's grievance.

## COUNT I
## ERISA VIOLATION (UPS, UPS Freight, and UPS Parcel)

48. Plaintiffs incorporate the allegations of all prior paragraphs.

49. UPS, UPS Parcel, and/or UPS Freight maintain an employee benefit plan(s) for its employees, specifically the UPS Pension Plan.

50. The UPS Pension Plan is governed by ERSIA.

51. As employees of UPS, UPS Parcel, and/or UPS Freight, Plaintiffs maintained and possessed certain contractual rights pursuant to the UPS Pension Plan and under ERISA.

52. A copy of the UPS Pension Plan is attached hereto as Exhibit C.

53. The UPS Defendants have violated their obligations to Plaintiffs under the UPS Pension Plan failing to pay or to provide ERSIA plan benefits. ERISA § 502(a)(1)(codified at 29 U.S.C. § 1132(a)(1)(B)).

54. The UPS Defendants have also violated their fiduciary duty that they owed to Plaintiffs. ERISA § 502(a)(codified at 29 U.S.C. § 1132(a)).

55. The UPS Defendants violated ERISA and Plaintiffs' rights under the Pension plan by, including but not limited to:

    a. Refusing to acknowledge Blackledge's status as a former UPS Freight

6

        employee, UPS Freight violated the UPS Pension Plan by refusing to provide him with a buyout one year after he was no longer employed with UPS Freight and because the UPS Defendants' have refused to acknowledge or to calculate correctly his retirement credits, Blackledge has lost 7.5 years of service towards his retirement.

    b.    By refusing to acknowledge Eddelman's status as a former UPS Freight employee, UPS Freight violated the UPS Pension Plan by refusing to provide him with a buyout one year after he was no longer employed with UPS Freight and because the UPS Defendants' have refused to acknowledge or to calculate correctly his retirement credits, Eddelman has lost 11 years of service towards his retirement.

56.    Plaintiffs are entitled to statutory penalties under 29 U.S.C. 1132(c)(1).

57.    The UPS Defendants breached their duties to Plaintiffs under the UPS Pension Plan and ERISA by failing to provide a full and fair appeal review to Plaintiffs.

58.    As a result of the UPS Defendants' breach of Plaintiffs' rights under the UPS Pension Plan and under ERISA, Plaintiffs have suffered and continues to suffer monetary damages.

## COUNT II
## BREACH OF CONTRACT (The Union)

59.    Plaintiffs incorporate the allegations of all prior paragraphs.

60.    The Union maintains a benefit plan(s) for its members, specifically, the IBT Local 710 Pension Fund.

61.    As a member of the Union, Plaintiffs maintained and possessed certain contractual rights pursuant to the IBT Local 710 Pension Fund.

62.    A copy of the IBT Local 710 Pension Fund is attached hereto as <u>Exhibit D</u>.

63. The Union has refused to acknowledge or to calculate correctly Blackledge's retirement credits and has lost 7.5 years of service towards his retirement.

64. The Unions has have refused to acknowledge or to calculate correctly Eddelman's retirement credits and has lost 11 years of service towards his retirement.

65. As a result of the Union's breach of their contractual rights, Plaintiffs have suffered and continue to suffer monetary damages.

## COUNT III

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

66. Plaintiffs incorporate the allegations of all prior paragraphs.

67. Defendant, UPS is an employer under the FLSA, 29 U.S.C. 203, et. seq.

68. Plaintiffs are employees who have been paid a regular hourly rate which is lower than the hourly rate to which they are entitled.

69. Pursuant to the FLSA, Defendant, UPS has paid Plaintiffs a lower rate for overtime than Plaintiffs were entitled to receive.

70. Defendant, UPS has willfully violated the FLSA, entitling Plaintiffs to liquidated damages.

71. Pursuant to the FLSA, Plaintiffs are entitled to attorney fees and costs of this lawsuit.

## COUNT IV

## VIOLATION OF INDIANA WAGE LAWS

71. Plaintiffs incorporate the allegations of all prior paragraphs.

72. Defendant, UPS has failed and refused to timely pay Plaintiffs the hourly rates to which Plaintiffs are entitled.

73. Plaintiffs are current employees of UPS and are entitled to pursue their claims for unpaid wages under I.C. 22-2-5-1, et. seq., which provides for treble damages and attorney fees when an employer fails to pay wages on a timely basis.

74. Plaintiffs are entitled to unpaid wages, liquidated damages, and attorney fees from Defendant, UPS.

WHEREFORE, Plaintiffs Gary Blackledge and Rick Eddelman, by counsel, seek the following relief:

a. to award all compensatory and consequential damages due to Plaintiffs based upon Defendants' actions and inactions as alleged herein;

b. to award punitive damages to Plaintiffs based upon Defendants' actions and 7 inactions as alleged herein;

c. to award all statutory penalties to which they are entitled;

d. to award Plaintiffs their attorney's fees herein;

e. to award Plaintiffs pre- and post-judgment interest due and owing; and

f. to award all other just and proper relief.

        Respectfully submitted,
        */s/ Mark Waterfill*
        Mark R. Waterfill, Atty. No. 10935-49
        2230 Stafford Rd. STE 115, PMB 379
        Plainfield IN 46168
        (317) 501-6060
        mark@waterfilllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that a true, exact and authentic copy of the foregoing has been served upon all counsel of record by way of electronic service the same day as filing.

*/s/ Mark Waterfill*