UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GARY BLACKLEDGE, | ) | |
| RICK EDDELMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01947-SEB-MG |
| | ) | |
| UNITED PARCEL SERVICE, INC., | ) | |
| UPS PENSION PLAN, | ) | |
| UPS PARCEL, | ) | |
| UPS FREIGHT, | ) | |
| TRUSTEES OF THE UPS PENSION PLAN, | ) | |
| PLAN ADMINISTRATOR OF THE UPS | ) | |
| PENSION PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Gary Blackledge ("Mr. Blackledge") and Rick Eddelman ("Mr. Eddelman") (collectively "Plaintiffs") brought this action against Defendants United Parcel Service, Inc., UPS Ground Freight, Inc., the UPS Pension Plan, and the UPS Pension Plan's Board of Trustees as Plan Administrator (collectively, "Defendants")[1] for their alleged violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001,

---

[1] On August 30, 2024, we ordered the parties to file a Joint Statement clarifying/correcting the identities of named Defendants. Plaintiffs originally named as Defendants non-juridical entities "UPS Parcel" and "UPS Freight." However, the parties now agree that the correct Defendants are "United Parcel Service, Inc." and "UPS Ground Freight, Inc.," respectively. Dkt. 112. (Plaintiffs nevertheless maintain that "United Parcel Service, Inc. and UPS Ground Freight, Inc., are subsidiaries of United Parcel Service, Inc." *Id.*) Plaintiffs also named "Trustees of the UPS Pension Plan" and "Plan Administrator of the UPS Pension Plan" separately, despite appearing to be one and the same entity. Unfortunately, the parties' Joint Statement offered little clarification, confirming simply that the Board of Trustees *is* the Plan Administrator.

1

*et seq.*, the Indiana Wage Payment Act ("IWPA"), Ind. Code § 22-2-5-1, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203, *et seq.* Defendants have moved for summary judgment on all claims. Dkt. 72. For the reasons explained below, their motion is **GRANTED**.

## LEGAL STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The summary judgment standard requires "no *genuine* issue of *material* fact," meaning that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247−48 (1986) (emphasis in original). Material facts are those that "might affect the outcome of the suit," and a dispute of material fact is genuine when "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

Because summary judgment is not "a vehicle for resolving factual disputes," the district court need not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, those tasks belong to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). "The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920 (citing *Anderson,* 477 U.S. at 249–50). When deciding whether a genuine dispute of material fact exists, the court construes all facts in the light most

favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572 (7th Cir. 2021).

## BACKGROUND

Messrs. Blackledge and Eddelman are former UPS Ground Freight, Inc. ("UPS Freight") delivery drivers who resigned from their UPS Freight positions to become employed as United Parcel Service, Inc. ("United Parcel") delivery drivers. Both employers are parties to separate collective bargaining agreements, each of which authorizes covered employees to participate in distinct pension plans. By starting new jobs with United Parcel, Plaintiffs lost their seniority and related service credits which they had accrued as UPS Freight employees. Their intent in filing the instant lawsuit is to recover those benefits.

## I. The Applicable Collective Bargaining Agreements

Pertinent to the dispute before us are two collective bargaining agreements both in effect from August 2018 through July 2023: First, the **National Master UPS Freight Agreement ("Freight CBA")**, which outlines the terms and conditions of employment with UPS Freight; and second, the **National Master United Parcel Service Agreement ("United Parcel CBA")**, which outlines the terms and conditions of employment with United Parcel. Neither UPS Freight nor United Parcel is a party to the other's collective bargaining agreement. Faulstick Decl. ¶ 3, 5, dkt. 110-2 (Declaration of United Parcel's Labor Manager, Matt Faulstick).

The United Parcel CBA was subsequently supplemented by two additional agreements: the **Local No. 135 Rider to the UPS National Master Agreement ("Local Rider")** and the **Teamsters Central Region and United Parcel Service Supplemental**

3

Agreement (**"Central Region Supplement"**). In interpreting various provisions of these agreements, if conflicts arise among them, the following order of precedence controls in fashioning a solution: first the Local Rider, then the Central Region Supplement, and last the United Parcel CBA.

### A.    Progression & Reciprocity

Through a process called "progression," both UPS Freight and United Parcel employees qualify for incrementally higher wages based on their years of service, until they hit the highest level. Absent a so-called "reciprocity agreement," an employee who leaves one UPS-affiliated employer to work for another effectively forfeits his progression rank and begins progression anew.

There are no reciprocity agreements under the Freight CBA, meaning that former UPS Freight employees cannot transfer their progression rank to their next job with a UPS-affiliated employer. Article 41 of the United Parcel CBA, by contrast, provides that "[n]o employee shall be required to complete a full-time progression more than one (1) time even if he or she transfers between full-time jobs" within the same company. Dkt. 110-4 at 179; Faulstick Decl. ¶ 15, dkt. 110-2. The Central Region Supplement provides that United Parcel and Plaintiffs' union, the International Brotherhood of Teamsters (the "Union"), "agree that they will undertake to attempt to establish appropriate reciprocity agreements to protect the pension rights of employees." Dkt. 110-5 at 31; *see also* Blackledge Dep. 134:5–8, dkt. 110-13 (acknowledging the same). However, no such reciprocity agreement was ever reached.

In 2020, a Florida-based United Parcel driver, who (like Plaintiffs) had previously worked for UPS Freight, invoked Article 41 of the United Parcel CBA to challenge his loss of progression rank (and associated benefits) that he had accrued from his prior employment with UPS Freight. The Southern Region Area Parcel Grievance Committee ultimately denied his claim and subsequent appeal, concluding that Article 41 does not require United Parcel to honor seniority and/or other entitlements earned from prior service with UPS Freight. Both Plaintiffs before us work within the Central Region. Defendants maintain that United Parcel and the Union have uniformly applied the ruling in the 2020 Southern Region case on a national basis. Faulstick Decl. ¶ 22, dkt. 110-2; *see also* Blackledge Dep. 134:13–15 (stating that "Central Region . . . would apply to me and my area," but "Southern Region" would not).

### B.   United Parcel CBA Grievance Procedure

The Local Rider to the United Parcel CBA sets forth the pertinent grievance procedures intended to resolve "any controversy, complaint, misunderstanding, or dispute" concerning the applicable labor agreements. Dkt. 110-6 at 23. "Grievance procedures may be invoked only by authorized Union or Employer representatives" in the following manner: First, the employee must raise his complaint with his immediate supervisor. *Id.* at 23–24. Thereafter, the employee may discuss the matter with the shop steward as well as the shop steward's immediate supervisor. If the parties cannot reach an agreement, the shop steward is directed to "promptly submit the written grievance . . . to management and the union." *Id.* at 24. Unless the parties otherwise reach an agreement, the grievance "shall be submitted

to the state committee," and, if the state committee is unsuccessful, "the grievance will be submitted to the UPS Joint area Committee." *Id.*

## II.    The Pertinent Pension Plans

### A.    UPS Pension Plan

The Freight CBA covers UPS Freight employees entitled to participate in the **UPS Pension Plan (the "Plan")**, a UPS-sponsored employee pension plan subject to ERISA and administered by the Board of Trustees (hereinafter "Trustees" or "Plan Administrator"). The Plan provides various benefits to employees occupying collectively bargained positions at UPS Freight, which positions are detailed in Benefit Schedule S of the Plan, entitled as "UPS Ground Freight Employees International Brotherhood of Teamsters (UE Plan)." Hinson Decl. ¶ 6, dkt. 110-9 (Declaration of United Parcel's Retirement Benefits Director, Jarett Hinson); Dkt. 110-10 at 191. The benefits available to plan participants are affected by "service credit," or the "years and months of credit for work . . . , which are accumulated and maintained for employees . . . for all purposes other than eligibility . . . and vesting." Dkt. 110-10 at 20. The Plan specifically allows service credit earned by UPS Freight employees, as directed by the Freight CBA.

Plan participants qualify for receipt of their pension benefits by (1) formally terminating their employment with UPS Freight and/or any "Related Employer"; and (2) having met the normal retirement age of sixty-five years. For the limited purpose of identifying plan participants' termination dates (and, thus, their eligibility for pension benefits), UPS Freight and United Parcel are treated as "Related Employers." Hinson Decl. ¶ 19, dkt. 110-9.

6

In October 2019, the Plan was amended by adding the 2019 Lump Sum Distribution and Immediate Annuity Window (the "2019 Window"), according to which those qualifying plan participants (or their surviving spouses) could elect an immediate lump sum distribution of their entire vested retirement benefit or an immediate annuity thereof. The 2019 Window extended from October 7, 2019, through November 16, 2019, for plan participants who had terminated their employment with UPS Freight and/or a Related Employer on or before May 1, 2016. Neither Mr. Blackledge nor Mr. Eddelman qualified for receipt of Plan benefits during the 2019 Window because each was employed by United Parcel, a Related Employer.

Otherwise, "to receive any benefits or to take any other action under the Plan," participants "must file the appropriate forms with the Plan Administrator." Dkt. 51-3 at 20. After "receipt of a notification of an adverse determination," plan participants have a right to file an appeal with the Plan Administrator, who retains "the exclusive right to interpret the Plan." *Id.* at 18, 21–22. Thereafter, plan participants are deemed to have exhausted their administrative remedies and may proceed to file a civil action in court, if they wish to do so. *Id.* at 22.

### B.    Local 710 Pension Fund

The Local Rider to the United Parcel CBA covers United Parcel employees entitled to participate in the **Local 710 IBT Pension Plan ("Local 710 Pension Fund")**, a union-sponsored pension fund that provides benefits to the employees of United Parcel and other UPS-related entities, as specified by the United Parcel CBA and supplemental agreements. Hinson Decl. ¶ 7–8, dkt. 110-9. United Parcel's monetary contributions to the Local 710

Pension Fund match the service credits earned by its employees. As a non-UPS-sponsored pension plan, the Local 710 Pension Fund retains the final authority on service credit determinations. *Id.* ¶ 10.

### III.    Plaintiffs' Employments

#### A.    Mr. Blackledge

Mr. Blackledge was hired by UPS Freight in August 2010, at which time he began accruing service credits under the Plan, as outlined by the Freight CBA.

In March 2017, non-party Jeff Combs ("Mr. Combs"), the Secretary Treasurer of Local No. 135, approached Mr. Blackledge with a proposal that he leave UPS Freight and join United Parcel on the promise of higher pay. To effect this transition, Mr. Blackledge signed and submitted a resignation letter, knowing that he would start at United Parcel as a seasonal driver and that his progression and seniority rank would restart. Blackledge Dep. 33:3–4, dkt. 110-13 (recounting that he "would start over in [his] seniority and pay"). In late September 2017, when Mr. Blackledge formally resigned from his position at UPS Freight, he had accrued 7.5 years of service credit under the Plan, entitling him to a $609.00 monthly pension benefit for life beginning at age sixty-five.

In October 2017, Mr. Blackledge began working for United Parcel as a seasonal driver and, by February 2018, had become a full-time driver. (Mr. Blackledge has not challenged his interim status as a seasonal driver. *Id.* at 130:20–131:7.) By February 2022, Mr. Blackledge had completed progression and reached the top rate of pay in his classification.

In September 2018, March 2020, and August 2020, Mr. Blackledge requested and timely received Plan information from the Plan Administrator. *Id.* at 55:21–56:17

(September 2018); *id.* at 64:24–65:2 (March 2020); *id.* at 63:2–64:2 (August 2020); Dkt. 110-16 (August 2020 email exchange).[2] On February 24, 2021, Mr. Blackledge, through counsel, emailed the Trustees a "letter of appeal" based on "the refusal of the UPS Pension Plan to consider [Mr. Blackledge's] years of service with UPS Freight in calculating his benefits under the UPS Pension Plan." Dkt. 51-1 at 2. According to the letter of appeal, "Mr. Blackledge requested a retirement buyout from UPS Freight but was told that he has never left the company and does not qualify for a buyout." *Id.* Although labeled as a "letter of appeal," there is no evidence that Mr. Blackledge submitted a claim to the Plan Administrator, in accordance with the Plan's claim procedure, nor does Mr. Blackledge identify any Plan provision purporting to promise a "buyout." Mr. Blackledge ultimately never received a response to his letter of appeal. Blackledge Aff. ¶ 26, dkt. 80-1.

In March 2021, Mr. Blackledge filed a grievance with the Union, nominally on behalf of "all individuals, past and present," alleging that United Parcel violated Article 41 of the United Parcel CBA. Dkt. 110-17 at 2. Mr. Blackledge asserted that, because UPS Freight and United Parcel are owned and operated "by UPS," he "was a transfer employee" rather than "a new hire," and thus should not have lost his progression rank and associated benefits. *Id.* He sought to be "made whole" through the restoration of "wages, seniority, insurance benefits, retirement benefits, and all other benefits." *Id.*

In his deposition testimony, Mr. Blackledge recalled that neither United Parcel nor his Union "wanted to go anywhere with" his March 2021 grievance, and, as a consequence,

---

[2] Defendants also claim—without an evidentiary citation—that Mr. Blackledge requested Plan information on January 20, 2020. Defs.' Br. 24, dkt. 110.

he did not receive a timely disposition of his grievance. Blackledge Dep. 88:5–6, dkt. 110-13. Although Mr. Blackledge's grievance "never progressed" through the procedure set forth in the Local Rider to the United Parcel CBA (e.g., submission to the UPS Joint committee and/or the UPS Joint Area committee), a hearing was eventually held on August 25, 2021. *Id.* at 90:9–10. According to Mr. Blackledge, however, no ruling was ever made. Blackledge Aff. ¶ 28, dkt. 80-1.

On January 27, 2022, Mr. Blackledge filed an Unfair Labor Practices Charge (the "Charge") with the National Labor Relations Board (the "NLRB"), averring as follows:

> [T]he Union failed to satisfy its duty of fair representation because it refused to process [Mr. Blackledge's] grievance for arbitrary or discriminatory reasons, or in bad faith. . . . Mr. Blackledge alleges that the Union has failed or refused to take the grievance to state panel after the Employer refused to answer the grievance.

Dkt. 110-8 at 7. On February 22, 2022, after Mr. Combs scheduled a meeting with Mr. Blackledge re: the March 2021 grievance, Mr. Blackledge withdrew the Charge against the Union.[3]

## B.    Mr. Eddelman

Mr. Eddelman was hired by UPS Freight in July 2008, at which time he began accruing service credit under the UPS Pension Plan. In June 2019, Mr. Eddelman terminated his employment with UPS Freight with 11.6 years of service credit under the UPS Pension Plan, entitling him to a $974.00 monthly pension benefit for life, payable at age sixty-five.

---

[3] In his deposition testimony, Mr. Blackledge stated that he withdrew his Charge only with respect to the Union but not with respect to the company. Blackledge Dep. 91:22–25, dkt. 110-13. Whatever remained of Mr. Blackledge's Charge, it too was eventually dismissed as untimely. *Id.* at 93:17–19.

In July 2019, Mr. Eddelman was hired by United Parcel. Like Mr. Blackledge, Mr. Eddelman worked through progression until reaching the top rate of pay in 2023. (Mr. Eddelman believes that he was wrongfully made to go through progression, resulting in his underpayment). As an employee of United Parcel, Mr. Eddelman received service credit under the Local 710 Pension Fund.

In April 2020, Mr. Eddelman applied for Plan benefits pursuant to the 2019 Window's limited-time opportunity available to terminated employees. Dkt. 110-11. The Plan denied Mr. Eddelman's request as untimely but further explained that his employment with United Parcel rendered him an "active [e]mployee" and thus ineligible. *Id.* The Plan's denial also outlined how to appeal the adverse determination to the Trustees. Mr. Eddelman, however, never appealed.

## IV.   Procedural History

On July 29, 2022, Plaintiffs brought this action in state court against Defendants as well as Teamsters Union Local No. 135 and Brotherhood of Teamsters Union Local 710 Pension Fund (both of which have since been voluntarily dismissed). Defendants timely removed this matter to federal court on the basis of federal question jurisdiction. In their operative complaint, Plaintiffs allege that the remaining Defendants violated their rights under ERISA, the IWPA, and the FLSA. Second Am. Compl. ("SAC"), dkt. 51. On November 15, 2023, Defendants moved for summary judgment, which motion is now fully briefed and ripe for ruling.

# DISCUSSION

Plaintiffs contend that their progression ranks and service credits should have carried over from UPS Freight to United Parcel. In requiring that they restart progression, Plaintiffs argue, UPS Freight and United Parcel violated their ERISA rights by refusing to count their service credits from both employments cumulatively for purposes of their pension benefits.[4] Plaintiffs also assert that United Parcel violated the IWPA and the FLSA.

## I.   ERISA

Plaintiffs assert a benefits denial claim under 29 U.S.C. § 1132(a)(1)(B) and a fiduciary breach claim under 29 U.S.C. § 1132(a), challenging the loss of their progression benefits on the grounds that they "never truly resigned" from their positions with UPS Freight and instead "simply transferred" from UPS Freight to United Parcel. Under their so-called "single employer" theory, Plaintiffs contend that "all employment indicators"—including their employee badges, their credentials for accessing their employee portals, their health insurance and insurance numbers, and their facial hair variances—remained unchanged, which, in turn, render UPS Freight and United Parcel as the same employer for purposes of pay and fringe benefits. Because UPS Freight and United Parcel "did not treat [them] as wholly new employees," Plaintiffs reason, they are entitled to the continuation

---

[4] In the operative complaint, Plaintiffs also alleged that UPS Freight violated the Plan by refusing to provide them with a buyout one year after they were no longer UPS Freight employees; and that they are entitled to statutory penalties under 29 U.S.C. § 1132(c)(1). SAC ¶¶ 55–56, dkt. 51. Defendants asserted various grounds for the entry of summary judgment on both claims—to which Plaintiffs offered not a single responsive argument. "A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered." *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1237–38 (7th Cir. 1997) (alterations omitted). In light of Plaintiffs' silence, we regard both claims as abandoned and enter summary judgment in Defendants' favor accordingly. *Id.*

of their progression benefits as well. Pls.' Resp. Br. 18, dkt. 80. Defendants argue that Plaintiffs failed to exhaust their administrative remedies with regard to their denial of benefits claim and that, in any event, the benefits denial and fiduciary breach claims ultimately fail on the merits.

"ERISA's principal function [is] to 'protect contractually defined benefits.' " *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100 (2013) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985)). "The plan, in short, is at the center of ERISA." *Id.* at 101. Consistent with ERISA's directives, courts "rel[y] on the face of written plan documents." *Id.* at 100–01 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995)). Our task begins with "enforcing the plan terms *as written* . . . ." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (emphasis added).

With these controlling legal principles in mind, we turn to Plaintiffs' claims below.

## A.    Benefit Denial Claim under § 1132(a)(1)(B)

Plan participants may bring a civil action under ERISA "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Where, as here, the pension "plan grants to its administrator the discretion to construe the plan's terms, then the district court must review the denial of benefits deferentially, asking only whether the plan's decision was arbitrary and capricious." *Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007). "[B]ecause ERISA directs employee benefit plans to provide adequate written notice of the reasons for denials of claims by plan participants and to create procedures for

the review of such denials of claims," the Seventh Circuit "require[es] exhaustion of ad-ministrative remedies as a prerequisite to bringing suit." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011).

The exhaustion requirement "encourages informal, non-judicial resolution of dis-putes about employee benefits." *Id.* Congress intended administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of claims settlement for all concerned." *Id.* (quoting *Kross v. Western Elec. Co., Inc.*, 701 F.2d 1238, 1244–45 (7th Cir. 1983)). Even where the administrative process "proves unavailing," exhaustion nonetheless "prepare[s] the ground for litigation," ensuring that the parties have developed a full factual record that further enables courts to take advantage of agency expertise. *Id.* at 361.

The Seventh Circuit has "consistently held that the decision to require exhaustion in a given case is committed to a district court's discretion." *Id.* at 365 n.5. Typically, "a failure to exhaust administrative remedies will be excused in few limited circumstances—when resort to administrative remedies would be futile, when the remedy provided is inadequate, or where there is a lack of access to meaningful review." *Orr v. Assurant Emp. Benefits*, 786 F.3d 596, 602 (7th Cir. 2015) (internal citations omitted).

Turning to the case at bar, the claims procedure set forth in the Plan provides that participants "must file the appropriate forms with the Plan Administrator to receive any benefits or to take any other action" thereunder. Dkt. 51-3 at 20. Filing a claim requires participants to "submit [their] request in writing" to the Plan Administrator. Participants

14

may, within sixty days of notification of an adverse determination, elect to bring an appeal, at which point the claims and appeals procedure has been exhausted and participants are entitled to file a claim in state or federal court. *Id.* at 22 ("You must exhaust the Plan's claims and appeals procedures before filing any civil action."); *id.* at 23 ("If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court, but only after you have exhausted the Plan's claims and appeals procedures.").

Plaintiffs contend that they exhausted any and all administrative remedies available to them under the Plan, as evidenced (according to Plaintiffs) by Mr. Blackledge's March 2021 Union grievance and his "letter of appeal" to the Plan. (Plaintiffs do not put forth an independent argument with regard to Mr. Eddelman's administrative exhaustion.) Because the record before us provides no evidence of any such compliance with the Plan's claim procedure, Plaintiffs' argument is unavailing.

Mr. Blackledge insists that he properly exhausted his administrative remedies under the Plan when he filed a *Union* grievance in March 2021 and later attempted to appeal to the *Plan* through his February 2021 "letter of appeal." Pls.' Resp. Br. 21, dkt. 80. Aside from the chronological discrepancy reflected in the timing of the purported appeal (in February) having preceded Mr. Blackledge's Union grievance (in March), Mr. Blackledge appears to have conflated the grievance procedure set forth under the United Parcel CBA with the benefits claims procedure set forth under the Plan. The United Parcel CBA outlines the terms and conditions for employment with United Parcel and further provides for United Parcel employee participation in the Local 710 Pension Fund. The Plan, by contrast, is the

15

pension benefit plan available for employees of UPS Freight whose employment is covered by the Freight CBA. In short, the United Parcel CBA grievance procedure is legally distinct from the Plan's claims procedure, and Mr. Blackledge offers no explanation as to how a CBA grievance (submitted to his Union) somehow translates to a claim for benefits (submitted to the Plan Administrator).

In sum, the Plan clearly and explicitly requires plan participants to submit the appropriate claim forms to the Plan Administrator before taking any other action, including bringing a lawsuit in federal court, dkt. 51-3 at 20–23, and Mr. Blackledge has adduced no evidence establishing that he did in fact do so.[5] Having failed to submit the appropriate claim form, Mr. Blackledge unsurprisingly did not receive an *appealable* adverse determination. Consistent with our legal obligation to "enforc[e] the plan terms as written," *Heimeshoff*, 571 U.S. at 108, we conclude that Mr. Blackledge did not comply with the Plan's claim procedure and thus did not exhaust his administrative remedies.

As for Mr. Eddelman, Plaintiffs do not assert, nor does our review of the record suggest, that Mr. Eddelman exhausted his administrative remedies. Although Mr. Eddelman submitted a claim for benefits within the 2019 Window, it is undisputed that he did not appeal the adverse determination he ultimately received. As such, he as well did not exhaust his administrative remedies.

---

[5] Although Mr. Blackledge did submit written requests for information and estimates to the UPS Pension Plan on three separate occasions (September 19, 2018, March 5, 2020, and August 7, 2020), it remains undisputed that he never filed a *claim* for benefits actionable under § 1132(a)(1)(B).

Plaintiffs nonetheless argue that they should be excused from the administrative exhaustion requirement because any attempt to do so would have been futile, given Defendants' "contention that the [pension] plans are distinct and [that] UPS Freight and [United] Parcel are distinct, not a single, employer." Pls.' Resp. Br. 21, dkt. 80.

"Futility is demonstrated by showing that it is 'certain' a plaintiff's claim will be denied by the plan administrator." *Ruttenberg v. U.S. Life Ins. Co. in City of New York, a subsidiary of Am. Gen. Corp.*, 413 F.3d 652, 662 (7th Cir. 2005) (quoting *Robyns*, 130 F.3d at 1238). Bald allegations, conclusory statements, nor mere doubts that continued pursuit of administrative remedies will result in a different outcome suffice to demonstrate futility. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 680 (7th Cir. 2002). Indeed, when a party "proffer[s] no facts indicating that the review procedure that he initiated will not work, the futility exception [simply] does not apply." *Id.* Additionally, "when a claimant ignores the administrative remedies and proceeds directly to federal court, he cannot be allowed to justify his choice by the fact that the plan defended itself in the lawsuit." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004). "Once battle is joined, positions calcify." *Id.* A plan's litigation strategy enforcing the terms as written, therefore, does not serve as evidence of futility.

So, again, applying these principles to the case at bar, we find no evidence of futility to justify waiver of the exhaustion requirement. Plaintiffs' sole argument is that, "[b]ased on the UPS Defendants' own assertions and argument in their summary judgment brief, had Plaintiffs pursued those internal remedies, they clearly would not have been successful because the UPS Defendants point to each other['s] ERISA plans as proof for denying

Plaintiffs' claims." Pls.' Resp. Br. 22, dkt. 80. Plaintiffs maintain that Defendants' positions taken throughout the course of litigation evince the futility of their hypothetical efforts to comply with the internal procedures under the Plan.

Plaintiffs' argument is unavailing for the simple reason that Defendants' litigation advocacy cannot—and therefore does not—justify circumventing administrative procedures, especially where, as here, Plaintiffs adduce no evidence of their having ever attempted to submit the correct claims forms for the benefits the seek in the instant lawsuit. Accordingly, we find that Plaintiffs have not demonstrated futility.

Accordingly, in the exercise of our discretion, we hold that Plaintiffs' failure to exhaust their administrative remedies entitles Defendants to the entry of summary judgment on Plaintiffs' denial of benefit claim.

### A.     Breach of Fiduciary Duty under § 1132(a)

Before turning to the merits of Plaintiffs' fiduciary breach claim, we pause briefly to clarify the relevant controlling statute. In framing their fiduciary breach claim, Plaintiffs cited § 1132(a) generally, SAC ¶ 53, dkt. 51, without specifying which of the six potential civil actions authorized therein they intend to assert. *LaRue v. DeWolf, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008). Defendants construed Plaintiffs' fiduciary breach claim as arising under § 1132(a)(3), which "authorizes civil actions for violations of the provisions of ERISA itself" as well as the terms of the plan. *Kross*, 701 F.2d at 1244. In their responsive brief, Plaintiffs (without elaborating) pegged their fiduciary breach claim to § 1132(a)(2), which permits the Secretary of Labor, plan participants, beneficiaries, and fiduciaries "to bring actions *on behalf of a plan* to recover for *violations of the obligations*

*defined in § 409(a)*," codified at 29 U.S.C. § 1109(a). *LaRue*, 552 U.S. at 253 (emphasis added). Plaintiffs, however, have not brought claims on the Plan's behalf, alleged a plan-wide breach, or asserted violations of § 1109(a). Pls.' Resp. Br. 17, dkt. 80 (discussing duty of loyalty defined in § 1104(a)). Accordingly, we construe Plaintiffs' fiduciary breach claim as arising under § 1132(a)(3)—not § 1132(a)(2). *See Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 804 (7th Cir. 2009) (describing § 1132(a)(3) as "an appropriate vehicle for remedying a breach of the fiduciary obligations owed to plan participants") (citing *Varity Corp. v. Howe*, 516 U.S. 489, 507–15 (1996)); *e.g.*, *Schatzel v. Cent. States Se. & Sw. Areas Pension Fund*, 941 F. Supp. 2d 999, 1007–08 (N.D. Ill. 2013).

To establish a breach of fiduciary duty under ERISA, a plaintiff must show (1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff. *Dean v. Nat'l Prod. Workers Union Severance Tr. Plan*, 46 F.4th 535, 546 (7th Cir. 2022).[6] ERISA imposes on plan fiduciaries the duty of loyalty, according to which the fiduciary must "act 'for the exclusive purpose' of providing benefits to participants." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting 29 U.S.C. § 1104(a)(1)(A)–(B)). "ERISA authorizes an award of equitable relief alone to a plan participant suing on her own behalf for breach of fiduciary duty." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010).

---

[6] We recognize that courts in this Circuit prefer (but do not necessarily require) administrative exhaustion when plaintiffs assert breach of fiduciary duty claims. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996); *e.g.*, *Baird v. Steel Dynamics, Inc.*, No. 1:23-CV-00356-CCB-SLC, 2024 WL 3983741, at *3 (N.D. Ill. Aug. 29, 2024). Here, however, Defendants have not raised an exhaustion argument with regard to Plaintiffs' fiduciary breach claim.

"Equitable relief under section 1132(a)(3) is available only when Congress did not provide relief elsewhere." *Griffin v. TeamCare*, 909 F.3d 842, 846 (7th Cir. 2018). "[A] majority of circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is unavailable under subsection (a)(3). *Mondry*, 557 F.3d at 805 (citing *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101, 106 (4th Cir. 2006) (collecting cases)). Thus, where an ERISA plaintiff can attain an adequate remedy under § 1132(a)(1)(B), he cannot repackage his benefit denial claim as a fiduciary breach claim under § 1132(a)(3).

Applying these principles to the case at bar, Plaintiffs cannot pursue their fiduciary breach claim because § 1132(a)(1)(B) provides the remedy they seek (i.e., additional service credits) for the alleged denial of benefits. Although the Seventh Circuit itself has "not had occasion to consider th[e] question," Plaintiffs here have "given us no reason to depart from the holdings of those circuits" that have barred ERISA plaintiffs from sustaining duplicative claims under subsections (a)(1)(B) and (a)(3). *Id.*; *see Griffin*, 909 F.3d at 846; *cf. Mink v. Barth Elec. Co., Inc.*, 685 F. Supp. 2d 914, 935 (S.D. Ind. 2010) (failure to respond to moving party's argument on summary judgment justifies treating issue as waived).[7]

## II.    Wage Claims

Plaintiffs assert that United Parcel compensated them at hourly rates lower than those required by the United Parcel CBA, in violation of the Indiana Wage Payment Act

---

[7] We would reach the same conclusion even if we reviewed Plaintiffs' claim under § 1132(a)(2). *See LaRue*, 552 U.S. at 258–59 (Roberts, C.J., concurring) ("Allowing a [1132(a)(1)(B)] action to be recast as one under § [1132(a)(2)] might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § [1132(a)(1)(B)].").

and the Fair Labor Standards Act. Defendants argue that Plaintiffs' wage claims fail because resolution of both requires interpretation of the United Parcel CBA and can be resolved only through the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

### A.    IWPA

The IWPA imposes a duty on Indiana employers to pay all wages due to employees, specifically mandating employers to "pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." I.C. § 22-2-5-1. It further provides that payments "shall be made for all wages earned to date not more than ten (10) business days prior to the date of payment." *Id.* A noncompliant employer becomes "liable to the employee for the amount of unpaid wages." *Id.* § 22-2-5-2. In interpreting the IWPA, the Indiana Supreme Court has concluded that the statutory language "unambiguously establishes that the legislature intended [it] to govern not only the frequency but also the amount an employer must pay its employee." *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002).

Where resolution of a state law wage claim "depends on the meaning of, or requires the interpretation of, a collective bargaining agreement, the application of state law is preempted[,] and federal labor law principles must be employed to resolve the dispute." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 499 (7th Cir. 1996) (citation omitted). Specifically, § 301 of the LMRA, 29 U.S.C. § 185(a), "provides that suits for violation of contracts between an employer and a labor organization confer original jurisdiction in federal district courts, [and] has complete preemption force." *Id.* at 498. "[T]he preemptive force of § 301 is so powerful [so] as to displace entirely any state cause of

action for violation of contracts between an employer and a labor organization." *Atchley v. Heritage Cable Vision Assocs.*, 904 F. Supp. 870, 874 (N.D. Ind. 1995), *aff'd*, 101 F.3d 495 (7th Cir. 1996), and *aff'd*, 101 F.3d 495 (7th Cir. 1996).

While the LMRA's preemptive force is broad, it is not automatic. *Atchley*, 101 F.3d at 499. Nothing in a collective bargaining agreement can exempt an employer from state laws of general application, nor may a collective bargaining agreement be utilized to override the substantive protections provided by state law. *Spoerle v. Kraft Foods Glob., Inc.*, 614 F.3d 427, 430 (7th Cir. 2010). Thus, an employee can maintain a state-law cause of action where the underlying "collective bargaining agreement is merely a tangential consideration . . . or where resort to its provisions is merely *pro forma*." *Atchley*, 904 F. Supp. at 874. In such circumstances, the LMRA will not preempt state law. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 396 (1987).

Here, United Parcel argues that the LMRA preempts Plaintiffs' IWPA claim because any resolution will turn on interpretation of disputed provisions in the United Parcel CBA. Plaintiffs contend that their IWPA claim (based on United Parcel's alleged failure to timely pay the correct wages) is not preempted because "[t]here is simply no dispute under the CBA," and, even if there were, "a mere glance or reference to the CBA" would suffice. Pls.' Resp. Br. 15, dkt. 80.

Plaintiffs' operative complaint alleges broadly that United Parcel "failed and refused to timely pay Plaintiffs the hourly rates to which [they] are entitled." SAC ¶ 72, dkt. 51. In their Statement of Claims, Plaintiffs refined their claim, asserting that they "were not paid at the proper hourly rate *according to the collective bargaining agreement*." Dkt. 60 ¶ 68

22

(emphasis added). United Parcel asserts that determination of the proper hourly rate would require interpreting the following provisions of the United Parcel CBA: Article 17 (compensable time and vacation); Article 33 (cost of living increases); Article 41 (annual wage increases and wage progression for full-time United Parcel employees); and Article 43 (mileage determinations). Dkt 110-4 at 60, 102, 178, 189.

Beyond their bare contention that there is "no dispute under the CBA," Plaintiffs offer no persuasive explication for how their claim that they were not paid "according to the collective bargaining agreement" can be resolved *without* meaningful interpretation of the United Parcel CBA. Determination of whether Plaintiffs were in fact paid an hourly rate commensurate with what (Plaintiffs claim that) the United Parcel CBA provided would necessarily require undertaking and resolving the parties' disputed interpretations of the United Parcel CBA, most specifically with regard to the progression provision set forth in Article 41. Because disputes involving the interpretation of collective bargaining agreements must be resolved in accordance with federal law, we conclude here that the LMRA preempts Plaintiffs' IWPA claim.

Having concluded that Plaintiffs' sole cause of action lies under § 301, we must evaluate whether Plaintiffs can maintain an action thereunder. *See Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 771 (7th Cir. 1991). On this point, United Parcel asserts that any LMRA claim is barred by the applicable six-month statute of limitations, which begins to run when Plaintiffs knew or should have known that the Union breached its duty of fair representation. *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999). Aside from a conclusory statement that the statute of limitations argument "misses the mark,"

Pls.' Resp. Br. 16, dkt. 80, Plaintiffs offer no independent analysis—factual or legal. The Seventh Circuit has repeatedly admonished parties that undeveloped arguments are regarded as waived. *Marcatante v. City of Chicago, Ill.*, 657 F.3d 433, 444 (7th Cir. 2011); *White Eagle Co-op Ass'n v. Conner*, 553 F.3d 467, 476 n.6 (7th Cir. 2009); *United States v. Berkowitz*, 917 F.2d 1376, 1384 (7th Cir. 1991). As such, we regard Plaintiffs as having waived their response to United Parcel's LMRA arguments. United Parcel is entitled to summary judgment accordingly.

## B.      FLSA

The FLSA operates "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.' " *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alterations in original) (quoting 29 U.S.C. § 202(a)). The "FLSA's two core provisions—the minimum wage provision and the overtime provision—require that employees receive a minimum wage for each hour that they are 'employ[ed]' as well as a premium wage (one and one-half times the regular rate of pay) for each hour they are 'employ[ed]' beyond forty hours in one work week." *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013) (alterations in original) (quoting 29 U.S.C. §§ 206(a), 207(a)). To establish that an employer has failed to provide overtime compensation, an employee must show that (i) he worked overtime without compensation; and (ii) the employer knew or should have known of the overtime work. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176–77 (7th Cir. 2011).

An "employee's rights under the FLSA are independent of his rights under a collective bargaining agreement and . . . cannot be waived by contract." *Vega v. New Forest Home Cemetery, LLC*, 856 F.3d 1130, 1133 (7th Cir. 2017) (citing *Barrentine*, 450 U.S. at 737, 740, 745). Thus, an employee's statutory and contractual rights "must be analyzed separately with respect to his right to enforce them in court." *Id.* at 1133–34. If, however, an employee's "claim were one relying on his substantive rights under the collective bargaining agreement, there is no question that he would have to exhaust his contractual remedies by pursuing a grievance or, in the alternative, demonstrate why futility or one of the other recognized exceptions to exhaustion should relieve him of that obligation." *Id.*

Plaintiffs here claim that United Parcel violated the FLSA by paying them regular and overtime rates lower than those to which they were entitled under the United Parcel CBA. SAC ¶¶ 68–69, dkt. 51; Statement of Claims ¶ 68, dkt. 60. Defendants argue that resolution of Plaintiffs' FLSA claims requires interpretation of the United Parcel CBA to determine the correct rate of pay, and, as such, Plaintiffs' overtime claims can *only* proceed under the LMRA. *E.g.*, *Vadino v. A. Valey Engineers*, 903 F.2d 253, 266 (3d Cir. 1990) (holding that FLSA claims dependent on CBA interpretation must be resolved through LMRA); *Martin v. Lake Cnty. Sewer Co.*, 269 F.3d 673, 679 (6th Cir. 2001) (same).

Plaintiffs' sole responsive argument is that employees' FLSA rights exist independently from and do not require any interpretation of the underlying collective bargaining agreement. *See* Pls.' Resp. Br. 15, dkt. 80 ("Instead, a mere glance or reference to the CBA is all that is necessary, and as such, the LMRA does not preempt Plaintiffs' FLSA

claim . . . ."); *id.* ("There is simply no dispute under the CBA as it relates to Plaintiffs' FLSA claim . . . , and thus, there is no preemption . . . by the LMRA.").

Certainly, as Plaintiffs maintain, the FLSA protects employees' rights to minimum wages and overtime compensation—both of which cannot be circumvented by virtue of a collective bargaining agreement, *see Barrentine*, 450 U.S. at 745—but Plaintiffs do not allege that United Parcel violated either of those protections. Their sole grievance that their remuneration did not comport with their interpretation of the United Parcel CBA does not translate to a violation of the FLSA, especially where Plaintiffs have asserted neither that they were paid less than the minimum wage nor that they were paid at an overtime rate less than one-and-one-half times their regular rate of pay for hours worked beyond forty.[8] Given that "the FLSA contains no language suggesting that an action filed thereunder would be an appropriate vehicle for the interpretation of a disputed provision of the collective bargaining agreement," we agree with Defendants that the FLSA is not the proper statutory vehicle to resolve United Parcel's alleged failure to pay them in accordance with the United Parcel CBA. *Vadino*, 903 F.2d at 265; *see also Vega*, 856 F.3d at 1133. Plaintiffs' perfunctory and undeveloped arguments, *see* Pls.' Resp. Br. 15, dkt. 80, do not persuade us otherwise and therefore do not forestall entry of summary judgment. *Draper v. Martin*, 664 F.3d

---

[8] Under the FLSA, overtime pay for all hours worked over forty is calculated using the employee's "regular rate," which is the hourly rate computed "by dividing [the] total remuneration for employment . . . in any workweek by the total number of hours actually worked . . . ." 29 C.F.R. § 778.109; *see* 29 U.S.C. § 207(a)(1). Plaintiffs' theory here is that their overtime compensation did not comport with the United Parcel CBA—not that their overtime compensation was incorrect under the formula required by the FLSA.

1110, 1114 (7th Cir. 2011) (remarking that courts do "research and construct the parties' arguments"). United Parcel is entitled to summary judgment accordingly.

## CONCLUSION

For the reasons explicated above, Defendants' Motion for Summary Judgment is **GRANTED**. Dkt. 72. Defendants' Motion for Oral Argument, dkt. 84, is **DENIED** as moot.

Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: _____9/20/2024_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Anthony J. Hornbach
THOMPSON HINE LLP
tony.hornbach@thompsonhine.com

John Timothy McDonald
Thompson Hine LLP
tim.mcdonald@thompsonhine.com

David T. Vlink
Teamsters Local Union 135
dvlink@local135.com

Mark R. Waterfill
ATTORNEY AT LAW
mark@waterfilllaw.com